OPINION AND ORDER

The primary issue in this case is whether sovereign immunity bars suit against the Treasurer of the Hopi Tribe if he is sued in his individual capacity or otherwise.

FACTUAL AND PROCEDURAL BACKGROUND 
[1]

First Mesa Consolidated Villages Kik-mongwi Ebin W. Leslie certified Appellants B. Steve Youvella and Richard W. Nayatewa to serve as Village representatives to the Hopi Tribal Council until November 30, 1995. Appellate Opinion and Order (A.O.O.) at 2. Prior to that time, on January 16, 1994, the Kikmongwi informed the Tribal Council in a letter that Appellants were “de-certifled” as representatives to the Council. Id. Appellants were then “asked” not to take their seats on the Council. Id. Respondents,[2] the former and present Treasurer, have not processed compensation checks for Appellants since that time. Id. Appellants claim that the Tribal Council never took lawful action to remove them from their seats, and thus the Treasurer’s refusal to issue a check is an unauthorized act or omission, outside the scope of his authority. Verified Complaint (V.C.) at 3.
Appellants filed a Verified Complaint against the Treasurer on July 1, 1995. A.O.O. at 2. Appellants requested an injunction compelling the Treasurer to pay all checks due to the Appellants for their service as Council Members. Id. Respondents filed a motion to dismiss for lack of subject matter jurisdiction. Id. On May 10, 1996, the trial court granted the motion to dismiss on the grounds of sovereign immunity. Id. The trial court held that a lawsuit directed at an agent of the Hopi Tribe, based on an action taken in his official capacity or within the scope of his legal authority, was effectively a suit against the Tribe. Decision and Order (D.O.) at 3. The trial court found that unless the Tribe clearly and expressly waived its immunity, sovereign immunity barred suit. Id. at 4.
Appellants subsequently filed a motion to alter judgement, which the trial court denied on June 12, 1996. A.O.O. at 3. On June 20, 1996, Appellants then filed a notice of appeal, requesting this Court to reverse the trial court decision and remand the case to the trial court for a hearing on the merits. Brief of Appellants (B.A.) at 5. Appellants agreed that tribal officials who are acting within the scope of their authority and not in violation of the law are protected by the shield of sovereign immunity. B.A. at 4. Appellants argued, however, that the trial court erred in concluding that Respondents had acted within the scope of their authority. B.A. *341 at 5. On November 22, 1996, this Court ordered the parties to submit supplemental briefs on the interpretation of Hopi Resolution H-62-90 and its applicability to “officer suits” in the Hopi Tribal Jurisdiction. Court Order 11-22-96-1.
This court issued an opinion and order on August 29, 1997, concluding that there was no evidence from which the trial court could have made factual findings necessary to determine whether sovereign immunity barred suit against the Treasurer. A.O.O. at 8. This Court remanded the case to the trial court for a hearing to ascertain whether the Treasurer has acted within the scope of his authority and consequently whether the doctrine of sovereign immunity applies to this case. Id. On September 16, 1997, Respondents filed a petition for rehearing, arguing that (1) the question of whether the Treasurer acted within the scope of his authority is a question of law, and not fact, and should be reviewed de novo; (2) this Court overlooked factual findings made by the Trial Court in concluding that the evidence in the record was insufficient; (3) this Court misapplied the provisions of Federal Procedure when it ruled that a Motion to Dismiss for Lack of Subject Matter Jurisdiction requires a preliminary hearing; and (4) this Court erred in requiring the Trial Court on remand to make a finding relevant to the merits of the case prior to resolving the question of jurisdiction. Respondent’s Petition for Rehearing (P.R.) at 1-2.
This Court granted the petition for a rehearing, in recognition of the significance of this case as one of first impression. The parties reargued their positions on the sovereign immunity issue on March 19, 1998.

SYNOPSIS

Pursuant to Hopi Tribal Ordinance 21, this Court has jurisdiction to rehear this case as an appeal and properly reviews this case de novo.
The doctrine of sovereign immunity extends to the Treasurer in this case if he has acted in his official capacity in refusing the payment of salaries. However, if he has exceeded his authority, then the requested injunction, compelling the Treasurer to pay the salaries allocated to the Appellants, is a proper prayer for relief and sovereign immunity does not bar suit.
This case is properly remanded to the trial court to find facts relevant to the Treasurer’s defense of sovereign immunity. Before the trial court can conclude that sovereign immunity precludes subject matter jurisdiction in this case, the trial court must first conduct a factual inquiry to determine whether the Treasurer acted in his official capacity. Finally, the trial court did not address the petition for an extraordinary writ and must do so on remand.

DISCUSSION

I. The Appellate Court has jurisdiction to rehear this case
The Appellate Court has jurisdiction to hear this case under Hopi Ordinance 21. Pursuant to Section 1.2.5, the Hopi Appellate Court has “jurisdiction to hear appeals from final judgments and other final orders of the Tribal Court of the Hopi Tribe.” The Tribal Court, as defined by Section 1.1.1, includes the Appellate Court and the Trial Court. Pursuant to Hopi Rule 37, the right of an appeal is subject to the timely filing of a notice of appeal within 20 days from entry of the final order. Because Respondents filed their petition for a rehearing or reconsideration 18 days after the opinion and order of this Court was issued, their petition was timely.
*342 The question before this court, whether sovereign immunity bars suit against an officer of the Hopi Tribe, is a mixed question of law and fact which requires a determination of whether the Treasurer was acting within the scope of his authority. A.O.O. at 4. The official capacity of the Treasurer is a legal issue and is reviewed de novo. Coin v. Mowa, AP-005-95 (1997).
II. Sovereign immunity bars suit against the Treasurer if he has acted in his official capacitg to refuse the pagment of salaries
The primary issue before this Court is whether sovereign immunity bars suit against an officer of the Hopi Tribe in the present circumstances. This Court has previously held that sovereign immunity bars suit against the Hopi Tribe. Martin v. The Hopi Tribe, AP-004-95 (1996). However, the question of whether an officer of the tribe may invoke sovereign immunity as a defense, is one of first impression.
As a case of first impression, this Court considers the persuasive law of other jurisdictions. Hopi Resolution H-12-76, Section 2. The majority of federal, state, and tribal courts have held that where an officer is acting within the scope of his or her valid authority, the doctrine of sovereign immunity protects the officer from suit. Dngau v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Hardin v. White Mountain Apache Tribe, 779 F.2d 476 (9th Cir.1985). The rationales for barring suit against officers are several and are described by one tribal court as the following.
Tribal officers, who perform all the acts of the tribal government,, must-be able to exercise their duties free from intimidation, harassment and the threat of lawsuits resulting from acts performed in the course of their official duties.
Satiacum v. Sterud, 10 ILR 6013, 6016 (Puy. Tr. Ct., Apr. 23, 1982). Courts have interpreted “scope of authority” broadly and have generally not found an official to be in excess of his authority unless there is clearly no jurisdiction or authority over the subject matter. Johnson, Sovereign Immunity, 12 Am. Ind. L.Rev. at 175.
In determining the scope of authority, courts have examined the duties of an officer and have characterized the duties as either ministerial or discretionary. Ministerial acts are those which require obedience to orders or the performance of a duty where the officer is left no choice of his own, while discretionary acts are those requiring personal deliberation, decision, and judgement. Id. See also Jackson v. Kelly, 557 F.2d 735 (1977) (duty is ministerial if it involves enforcement or administration of mandatory duty at operational level, and it is discretionary if it involves judgement, planning or policy decisions).
The general rule applied by federal courts is that an officer who acts contrary to his ministerial duty is liable for his actions. However, if an officer has the authority to exercise discretion then he is not liable for his actions. Johnson, Sovereign Immunity, 12 Am. Ind. L.Rev. at 177.
A. Treasurer had duty to make payment if authorized by Council
The duty of the Treasurer to make authorized payments is prescribed by the Tribal Council under the Hopi Constitution and By-laws, and is therefore a ministerial duty. Pursuant to the By-laws, the Treasurer “shall make payments ... only when authorized by a resolution of the Council, and in the manner authorized.” Article 1, Section 5 of Hopi By-laws. Thus, if the Council has authorized the payment of sal *343 aries to Appellants, then the Treasurer must execute his ministerial duty and make such payment.
Appellants contend that the Tribal Council authorized payment to Appellants for their service as council members. B.A. at 7. Because the Treasurer has refused payment, Appellants argue that the Treasurer is acting contrary to his duty, which requires him to make payments that are authorized by the Council. Appellants refer to Council resolutions that direct the Treasurer to pay the salaries of all council members. However, Appellants do not cite to a specific resolution in their Briefs.
Respondents contend that no written request by the Council authorized payment to Appellants, and the Treasurer therefore acted pursuant to his duty in not issuing checks that were not authorized. A review of the record does not clarify this disputed fact, and further factual inquiry is necessary to determine whether the Tribal Council in fact, authorized payment to Appellants. If the trial court determines that the Council did not authorize payment, then the Treasurer had no initial authority to make payment and properly refused to pay Appellants.
B. Treasurer had duty to stop payment if so directed by Council
If the trial court determines that the Council did initially authorize payment, then the question remains, whether the Treasurer acted within his official capacity in stopping payment after January 4, 1994. Because the duty to make authorized payments is a ministerial one, and is not discretionary, the Treasurer may not stop payment absent direction from the Tribal Council.
Parties do not directly address whether the Council directed the Treasurer to stop payment to Appellants. Instead, parties focus on whether the “de-certification” letter sent by the First Mesa Kikmongwi supported the removal of Appellants from office, and whether the Tribal Council followed the proper procedures in removing Appellants. However, this case is neither one against the Council nor one against the Kikmongwi. The question before this Court is simply whether the Treasurer acted pursuant to his prescribed duty, and that answer is found in the direction given to the Treasurer by the Council.
The evidence in the record does not support a finding of whether or not the Council provided direction to the Treasurer.[3] Further inquiry is needed to establish what procedures were required of the Council to direct the Treasurer to stop payment. The trial court must determine whether the Council followed such procedures and in fact, directed the Treasurer to stop payment. If the Treasurer did receive direction from the Council to stop payment, then his refusal to pay Appellants is consistent with his ministerial duty.
C. Prayer for injunction should be heard if Treasurer exceeded duty
If the Treasurer acted contrary to the direction given to him by the Council, then sovereign immunity does not bar suit in this case. Consequently, a prayer for in *344 junction should be heard. “Sovereign immunity does [not] bar properly framed suits for injunctive relief against tribal officials in tribal courts under the Indian Civil Rights Act.” Hopi Resolution 62-90.
Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of Indians. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The Hopi Tribe thus has a strong interest in providing relief to persons harmed by government officials acting outside of their official capacity. Johnson, Sovereign Immunity, 12 Am. Ind. L.Rev. at 190.
The Tribal Council is the governing body of the Hopi Tribe and has the sole authority to determine whether and how tribal funds are spent. The Treasurer may not act contrary to the express direction of the Council. Once the Council has authorized payment, the Treasurer may not refuse payment to Appellants, absent clear direction from the Council that the Treasurer should stop payment. If the Treasurer acts outside of his official capacity, then he is no longer protected by sovereign immunity and a prayer for in-junctive relief should be heard by the trial court.
III. On remand, the trial court must make specific findings of fact before it determines whether sovereign immunity bars suit in this case
Respondents assert that the Appellate Court erred in remanding the case to the trial court to conduct a fact-finding hearing prior to determining subject matter jurisdiction, based on a defense of sovereign immunity. However, a determination of jurisdiction in this case requires the trial court to make specific findings with respect to sovereign immunity. The trial court must determine that the defense of sovereign immunity is properly invoked, prior to determining that it has no subject matter jurisdiction because sovereign immunity is invoked.
In this case, the trial court made no findings of fact prior to concluding that sovereign immunity precluded jurisdiction. The trial court determined that the motion to dismiss for lack of jurisdiction was supported by law. D.O. at 1. Relying on the limited information provided by oral arguments, the law and the pleadings, the court granted the motion. Id. Though it may properly consider additional sources to rule on a motion to dismiss for lack of subject matter jurisdiction, the court did not reach beyond the information before it. 27A Fed. Proe., L.Ed. § 62:473 (1996).
No findings of fact could have been made, as no intrinsic evidence, such as affidavits, interrogatories, depositions, witness testimony, and other documentary evidence, was present. D.O. at 7. Though the trial court heard oral arguments on the motion to dismiss, the facts or evidence mentioned by attorneys during oral arguments are subject to hearsay dangers, are not under oath, and are not subject to cross examination. Id. Accordingly, oral arguments that merely restate legal arguments are insufficient to establish facts. Id.
Consistent with our decision in Youvella v. Dallas, 96-AP-00002 (1997), this case is properly remanded to the trial court to hold a hearing and conduct other fact-finding inquiries relevant to the applicability of sovereign immunity in this case.
IV. The trial court did not address the petition for an extraordinary writ and must do so on remand
In their initial complaint, Appellants requested the issuance of an Extraordinary *345 Writ against the Treasurer compelling the performance of his duties. V.C. at 6. The trial court failed to address this issue in their decision and order, and the Appellants reminded this Court of their request in their brief. B.A. at 45-46. This Court limited its review to the motion to dismiss for lack of subject matter jurisdiction and did not address the issue. Throughout this litigation, the petition for an Extraordinary Writ has been outstanding. The trial court must now address this petition on remand.
Recognizing the lack of clarity in Hopi law on the appropriate procedure for an extraordinary writ of mandamus, this Court provides guidance on the procedures. The Hopi Indian Rules of Civil and Criminal Procedure Rule 35 instructs that Hopi trial and appellate courts may grant an extraordinary writ when (1) no other plain, speedy, and adequate remedy exists, and (2) one of four other acceptable grounds are met.[4] HIRCCP Rule 35(a). However, this provision does not set out the pleading requirements or burdens of the parties, and the trial court may find foreign authority helpful on this subject.
In U.S. jurisprudence, there is a distinction between writs of mandamus at the appellate level and at the trial level. Whereas mandamus actions at the trial level are directed at a specific person or entity who is failing to abide by the petitioner’s already established rights, mandamus actions at the appellate level are directed at the district court or district judge.
At the trial level, the writ of mandamus was developed to provide a bypass to the lengthy judicial process. A writ of mandamus is an extraordinary remedy developed to expedite matters where an applicant has an immediate and complete right to the thing demanded. Bums v. Superior Court of Pima County, 97 Ariz. 112, 397 P.2d 448 (1964). The purpose of the writ of mandamus is to enforce rights already established, and not to establish or declare the rights of the parties. 52 Am. Jur.2d § 4, 333-34(1970).
At the appellate level, the courts employ mandamus to confine a lower court to its prescribed jurisdiction or to compel a lower court to exercise its lawful authority. Linda Madrid, Mandamus, 72 Geo. L.J. 651, 651 (Dec. 1983). The Appellate court may only issue a writ against the district court if the judge (1) has acted beyond his jurisdiction; (2) has refused to exercise his jurisdiction when he has no authority to refuse; (3) has usurped judicial power or clearly abused his discretion; (4) has persistently disregarded federal procedural rules; or (5) has been faced with a significant question of first impression concerning the power of the district courts under the federal rules of procedure. Maryellen Fullerton, Exploring the Far Reaches of *346 Mandamus, 49 Brook. L.Rev. 1131, 1143 (Summer 1983).
In the present case, Appellants petitioned the trial court for a writ of mandamus to be issued against the Treasurer. Upon the failure of the trial court to address the writ, Appellants reminded this Court of its petition. However, Appellants did not seek a writ against the trial court itself, and this Court therefore refrains from acting on the petition for a writ of mandamus.

ORDER OF THE COURT

This case is remanded to the trial court to find facts relevant to a determination of whether the Treasurer acted within his official capacity, and specifically whether he acted pursuant to the express direction of the Council. On remand, the trial court must also address the petition for extraordinary writ which it did not previously address.

. There have been no evidentiary facts established thus far. This factual background has been either stipulated by the parties or gleaned from the original complaint.

. "Respondents’’ refers to Patrick Dallas, the Tribal Treasurer as of January 6, 1994, and subsequent treasurers (Does 1-50) who do not issue the disputed compensation checks. Though Appellants name many Respondents, they request an injunction only against the Treasurer in office to compel him to perform his duties and pay the salaries that Appellants allege are due to them. This order therefore refers to the Treasurer in the singular.

. A letter written by Hopi Tribe General Counsel on January 23, 1996 and directed to Attorney for Appellants, suggests that Treasurer has been acting at the direction of the Tribal Council. The General Counsel writes that the "Tribe continues to be of the view that it bears no obligation to your clients in [this] case." B.A. at 16. However, this evidence is insufficient to determine what, if any, explicit directions were received by the Council.

. The four grounds are:
(a) Where any person usurps, intrudes into, or unlawfully holds or exercises a public office or does or permits to be done any act which by law works a forfeiture of his office; or
(b) Where an inferior tribunal, board or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion; or
(c) Where the relief sought is to compel any inferior tribunal, board or person to perform an act which the law specially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is lawfully excluded by such inferior tribunal, board or person; or
(d)Where the relief sought is to arrest the proceedings of any tribunal, board or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, board, or person.